| .EDWARDS, Judge.
Defendant Stephen Bolton appeals his conviction for theft. We affirm.
Defendant was charged with a violation of La. R.S. 14:67.10, theft of goods valued at over one hundred dollars. Following his arraignment and plea of not guilty, he was tried by a jury which found him guilty as charged. The trial court sentenced defendant to two years at hard labor, with credit for time served; subsequently, the state filed a multiple offender bill of information, alleging defendant to be a fourth felony offender. The bill was later amended to remove one of the alleged predicate convictions. On that day, the trial court advised defendant of his rights, which rights defendant waived. He admitted to the allegations in the multiple bill as amended. The court vacated the original sentence, and imposed an enhanced sentence of four years at hard labor without benefit of probation or suspension of sentence. From this conviction defendant appeals.
| gAt 8:45 p.m. on March 14, 1998, Craig Stokes, senior security officer at Marshalls Department Store in Oakwood Shopping Center in Gretna, testified that he was on duty at the store. Stokes was stationed in an office at the rear of the store, watching a surveillance monitor. By way of the monitor, he saw defendant, Stephen Bolton, enter the store in a wheelchair. Defendant was accompanied by a man on foot. The two men entered the men’s department, where defendant took two Nautica brand jackets from a rack. Defendant removed the security tags from the jackets, then folded the jackets and concealed them between his back and the wheelchair seat.
Defendant’s actions were also witnessed by Valerie Gilmore, a security trainee stationed on the sales floor. Stokes sent Gilmore onto the sales floor to more closely observe defendant. As Stokes and Gilmore continued to watch from their respective positions, defendant wheeled himself to the front of the store, past the cashiers and through the front entrance. Defendant did not pay for the jackets. Ms. Gilmore followed defendant and his companion out of the store, which is located on the second floor of the mall. The two men entered a nearby elevator, along with Ms. Gilmore. Stokes went to the *366 ground floor by way of an escalator, and stopped defendant as he attempted to exit the elevator.
Stokes testified that Marshalls sells the type of Nautica jackets confiscated from defendant. Gilmore and Stokes both identified the jackets at trial. The jackets had price tags from Marshall’s on them. Both testified that the value of the jackets was $79.99 each, Defense counsel objected, urging that the witness was not qualified to testify as to the value of the property, but the court allowed the testimony. On cross-examination, defense counsel asked Stokes the value of the property, to which Stokes gave the same reply as in his direct testimony.
^Following defendant’s apprehension, Stokes and Gilmore escorted defendant to the store’s security office, where Stokes confiscated the jackets. Stokes called police. Deputy Harley Ducote reported to the store. Both Ducote and Stokes testified that defendant gave his name as Ron Brandon. Ducote took a statement from Stokes, and issued a written report. The jackets were photographed, and the photographs were identified by Stokes and Gilmore at trial. Ducote placed defendant under arrest and transported him to the Jefferson Parish Correctional Center. Defendant’s companion was not detained.
Defendant was identified by all witnesses as the person in the wheelchair.
Theresa Migliore, a staff nurse in the medical unit at the Jefferson Parish Correctional Center, testified that defendant is paralyzed from the waist down, but has full use of his hands.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant avers that the trial court erred in allowing the security officers to testify as to the value of the items removed from the store over the objection of counsel. Defendant contends that a price tag is a written assertion of the value of the merchandise and therefore, the witnesses testified as to an out of court, un-sworn written statement. According to the defendant, no foundation for the testimony was laid prior to the introduction of the testimony to establish that the officers were qualified to testify as to the value of the items. Defendant further urges that without establishing the necessary foundation that the price tags constituted a business record exception to the hearsay rule, the testimony constituted inadmissible hearsay.
Hearsay is defined as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the |fitruth of the matter asserted.” La. Code Evid. art. 801(C). Unless otherwise authorized by the Code of Evidence or other legislation, statements constituting hearsay are inadmissible as evidence. La.Code Evid. art. 802; State v. Schexnayder, 96-98 (La.App. 5th Cir. 11/26/96), 685 So.2d 357, wrii denied, 97-2251 (La.1/16/98), 706 So.2d 973.
The state must prove the value of the stolen property, for upon this proof depends the determination of the severity of the theft, and the punishment for a convicted offender. State v. Bourg, 470 So.2d 291 (La.App. 5th Cir.1985), writ denied, 475 So.2d 354 (La.1985); State v. Monterroso, 96-376 (La.App. 5th Cir. 11/14/96), 685 So.2d 249.
The record shows that the testimony at issue did not consist of assertions by an out-of-court “declarant” as defendant avers, but was based on the personal observations of the witnesses. Stokes identified State’s Exhibits 1, 2 and 4, as photographs of the jackets taken at the time of defendant’s arrest. The photographs show Marshalls price tags attached to the merchandise and also depict printed signs containing the police item number and the total value of the jackets, $159.98. The police evidence card attached to the photographs shows the value of the stolen goods as $159.98. The record shows that Stokes had the opportunity to closely observe the jackets, with price tags attached, when he *367 seized them from defendant. It is apparent from the evidence at trial that Mr. Stokes testified as to the value of the jackets from his experience as a store employee, and his direct contact with the merchandise on the night of the crime.
Ms. Gilmore also testified that she knew the Nautica jackets to be of the type sold at the store. She stated she was present when the jackets were retrieved, and that at that time the price tags were still on them. She testified that [ fithe two jackets were priced the same, and that she knew each one to be valued at $79.99.
We find the disputed testimony was admissible. See State v. Sanders, 558 So.2d 785 (La.App. 5th Cir.1990), torit denied, 581 So.2d 677 (La. 1991), wherein we affirmed a conviction for theft. The value of the stolen property in that case was proven by the witness, an assistant chief of store security, who testified that the approximate value of the two eases of liquor was determined because “I got with the liquor supervisor and we verified the prices by the case.” Also State v. Jackson, 96-2540 (La.App. 4th Cir. 11/26/97), 706 So.2d 494; writ granted in part on other grounds, State v. Jackson 97-3200 (La.5/15/98), 714 So.2d 679; conviction and sentence affirmed on remand, State v. Jackson, 96-2540 (La.App. 4th Cir. 8/12/98), 718 So.2d 1001. There, defendant claimed that the security officer’s testimony as to the value of the jacket was opinion testimony and not admissible because the witness was not qualified as an expert. The court found that the value of the jacket was determined by looking at the price tag, and that the witness was testifying as to facts, not giving opinion testimony.
In the present case, the state’s witnesses also testified as to facts from their own knowledge and personal observations, not opinions. Finally, in the present case, defense counsel elicited testimony from Craig Stokes on the value of the jackets. The evidence as to the value of the jackets was uncontroverted. As in State v. Jackson, supra and State v. Sanders, supra, the testimony was clearly not hearsay and was admissible. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TWO
Defendant requests a patent error review, urging that the trial court did not inform him of the prescriptive period for post-conviction relief.
|7The record in this case was reviewed for errors patent in accordance with La. Code Cr. Pro. art. 920 and State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
La.Code Cr. Pro. art. 930.8 dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. The record shows that on the day of defendant’s original sentencing, the trial court instructed defendant, “Mr. Bolton, also, you have three years from the day your judgment of conviction and sentence becomes final within which to apply for post-conviction relief.” No such instruction was given following the sentence on the multiple offender proceedings. The appropriate remedy is to remand the case for the trial judge to inform defendant of the provisions of article Code Cr. Pro. art. 930.8(C) by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Crossley, 94-965 (La.App. 5th Cir. 3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459; State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94), 643 So.2d 1289.
Accordingly, defendant’s conviction is affirmed. The trial judge is ordered to inform defendant of the provisions of La. *368 Code Cr. Pro. art. 930.8(C), by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. This case is remanded.
AFFIRMED AND REMANDED.